[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action for dissolution of marriage was brought to this court on May 4, 1999. It was tried to the court on August 1 and 2, 2000.
Based on the credible evidence the court finds the following facts. The parties were married on May 12, 1990, in Wethersfield, Connecticut. They have no minor children issue of the marriage. They have resided in the state of Connecticut throughout the marriage. They have not received financial support from the state or any municipality therein. The court has jurisdiction to hear this matter.
At the time of trial the plaintiff wife was 52 years old and the CT Page 13114 defendant husband 57. Both parties were in good health. The plaintiff, a nurse, was employed as a consultant in clinical pharmaceutical research. She worked throughout the marriage except for a period of six or eight months during which she collected unemployment benefits. She earns $2000 per week.
The defendant is a real estate appraiser for People's Bank and earns $1231 per week from that employment. This sum is supplemented by retirement income of $270 per week which results from his years of service as a state employee with the Department of Transportation (DOT)to 1992. Between 1992 and 1994 he worked part-time as a real estate appraiser for both DOT and People's Bank. Presently he is employed full-time by People's. He is vested in his pension at People's. He anticipates that if he works until he is 65 years of age he will receive $1100 in income monthly. The defendant is also entitled to receive a pension from the United States Navy when he is 60 years old which will approximate $800 per month.
When her first marriage was dissolved in 1982 the plaintiff had $150,000 in an IRA/Keough account, a $32,000 cash settlement, a new car and a savings account. By 1990 she owned a home at 1336 Rubber Avenue, Naugatuck, a condominium in Cancun, Mexico, a stock portfolio valued at $37,000, an IRA/Keough valued at approximately $250,000, an annuity from Travelers in the amount of approximately $40,000 which resulted from consulting work she had performed for Travelers, and $2700 in cash. She added no money to her stock portfolio account during the instant marriage. The annuity is now valued at $990,000 because she made rollover contributions to that account.
At the time of the marriage the defendant owned a condominium unit on Wynwood Avenue, Cromwell. He also had a TSA account, a savings account and an automobile. He owed his sister $10,000 from 1986.
After the marriage the plaintiff moved into the Wynwood condominium and leased the Naugatuck property for a profit. Throughout the marriage the parties deposited their paychecks and the defendant wrote out the checks for household expenses. The parties did not discuss finances before the marriage; afterward the plaintiff relied upon the defendant to handle their finances.
When the parties married the plaintiff placed the defendant's name on the stock account and he placed hers on his Connecticut State Employees Credit Union (CSE) account. At the time of the marriage the balance in the CSE account was $5469. During the marriage, monies that were deposited by the defendant included his employment earnings, retirement funds received from the DOT in excess of $9000, a real estate commission CT Page 13115 of $4200 and proceeds from the refinancing of mortgages on the Wynwood condominium in the amount of $10,196.22. The plaintiff's assets provided the source of the largest sums deposited to the CSE account. These sums included funds from a home equity line of credit on the Naugatuck home and then the proceeds from the sale of the home.
Within one year of the marriage, in January, 1991, the defendant paid off the loan to his sister in the amount of $10,000. Two months prior to the marriage he had begun to pay sum was $4200 in real estate commission paid to the defendant as a result of the sale.
In November 1994, the defendant removed $50,000 to an account in his sole name at Shawmut Bank. In September 1995, he withdrew from Shawmut $37,344 for a down payment on the second boat. The boat was sold during the pendency of this action after the parties disagreed as to whether it should be used during the summer. The defendant used the boat, but refused to contribute $5000 in connection with a repair. The plaintiff paid that amount. The plaintiff's attorney has held the proceeds of $67,000 in escrow pending the outcome of this dissolution action.
In April 1995, the defendant purchased a car costing in excess of $18,000 withdrawing the money from the Shawmut account.
At diverse times throughout the marriage the defendant withdrew funds from the joint account. While some undoubtedly were used on joint living expenses, the accumulation of joint assets such as the boats and the Mystic lot was due in large part to the plaintiff's wealth.
The breakdown of the marriage was caused by the defendant's treatment of the plaintiff as a "servant". He did not assist with household chores despite her requests for help. He blamed her for deficiencies in their sexual relationship. Periodically, he told her that she could leave if she did not like his attitude. In 1994 he sought to meet other women by calling the Hartford Courant dating service. In April 1999, the plaintiff left the marital home.
When the plaintiff left the marital home she removed very few personal possessions. The defendant changed the locks and within one week changed the name on the People's Bank joint account to prevent her having access to funds. In the following week he changed the name on the joint account at the Connecticut State Employees Credit Union (CSE) commandeering a total of approximately $70,000, with these actions.
Included in these funds was the sum of $26,510.62 which had resulted from the sale of the plaintiff's property in Cancun.
CT Page 13116 On September 13, 1999, the parties entered an agreement before the court (Kocay, J.) wherein the defendant paid to the plaintiff the sum of $50,000 from the CSE account. The defendant was restrained from using any sums from the People's checking account other than using funds resulting from the deposit of his paycheck. The parties agreed that the balance of the account at the time of dissolution (sic) was $17,761. The plaintiff used the funds she received to place a down payment on a condominium.
The court finds that the defendant had minimal assets when he entered the marriage. The property held solely by the plaintiff today was hers prior to the marriage.
In entering the following orders the court has considered the criteria set forth in General Statutes 46b-62, 46b-81 and 46b-82. Based on the foregoing findings the court orders the following:
1. The marriage of the parties is dissolved on the grounds of irretrievable breakdown.
2. Neither party is awarded alimony as they are both self-supporting and have sufficient resources for retirement income.
3. Each party shall retain ownership of his/her own condominium and each shall be responsible for paying his/her own mortgage, taxes, insurance and other expenses in connection with said ownership.
4. The plaintiff shall retain ownership of the Smith Barney accounts, including her stock portfolio and retirement funds, the Bank of America annuity, the Kelly 401K account and the funds in her People's Bank savings and checking accounts.
5. The defendant shall transfer to the plaintiff his interest in the Smith Barney stock portfolio.
6. He shall retain ownership of his State of Connecticut retirement funds, his Navy pension and his People's Bank pension, his IRA, his 401K, and his People's Bank account funds.
7. Each party shall retain his/her own automobile and be responsible for any liability thereon.
8. The plaintiff shall obtain those items of furniture and furnishings, except for the television on the third floor, which she brought into the marriage or were provided by her employer. These items shall be recovered within 30 days of the date of this judgment. The defendant shall retain those items he brought into the marriage. All CT Page 13117 other such items jointly owned shall be divided equally by the parties.
9. The plaintiff shall quitclaim her interest in the Mystic property to the defendant. Within thirty days, he shall list the property for sale through the real estate brokers who secured the buyers he refused, and if the buyers are available to purchase the property, complete the sale in accordance with the offer. In the event these buyers are not willing to purchase the property, he shall continue to list the property. In the event the property is not sold by May 1, 2001 the price shall be reduced by 5%.
The net proceeds of the sale, after payment of customary closing costs, shall be divided as follows: the first $32,500 to the plaintiff and the next $32,500 to the defendant, if available. In the event there are funds in excess of $65,000 they shall be divided equally between the parties.
The defendant shall be solely responsible for all costs of litigation and damages resulting from his refusal to sell the property for $70,000 and he shall hold the plaintiff harmless and indemnified therein. This liability shall be in the nature of alimony and not dischargeable in bankruptcy. From the defendant's share, the sum of $10,000 shall be held in escrow by the closing attorney until the defendant receives either a release or the statute of limitations runs with regard to the lawsuit.
10. The plaintiff shall receive the funds held in escrow by her attorney from the sale of the boat.
11. Each party shall provide for his/her own medical insurance.
12. Each party is responsible for the liabilities which appear on his/her financial affidavits.
13. Neither party is awarded attorney's fees.
The plaintiff's name shall be restored to Sandra Vitiello. All other claims for relief not addressed herein have been rejected.
Judgment shall enter accordingly.
Both counsel are commended for the presentation of their clients' respective positions.
SANDRA VILARDI LEHENY, J.